### United States District Court
### District of Massachusetts

```
_____
                                )
ELAINE JOYCE,                   )
          Plaintiff,            )
                                )
          v.                    )     Civil Action No.
                                )     08-10277-NMG
TOWN OF DENNIS, DENNIS PINES    )
GOLF COURSE, DENNIS HIGHLANDS,  )
ROBERT CANEVAZZI, MICHAEL       )
CUMMINGS, DENNIS PENNER and     )
RUSSELL CHAMPOUX,               )
          Defendants.           )
_____ )
```

### MEMORANDUM & ORDER

**GORTON, J.**

Plaintiff Elaine Joyce ("Joyce") brought suit against the Town of Dennis ("the Town"), Dennis Pines Golf Course ("Dennis Pines") and Dennis Highlands (collectively, "the Town defendants") and Robert Canevazzi ("Canevazzi"), Michael Cummings ("Cummings"), Dennis Penner ("Penner") and Russell Champoux ("Champoux") (collectively, "the individual defendants"). The suit is for gender discrimination pursuant to 1) Massachusetts anti-discrimination statutes, M.G.L. c 272, §§ 92A, 98 and M.G.L. c. 151B, § 5, 2) the federal civil rights statute, 42 U.S.C. § 1983, for violations of the Equal Protection Clause, U.S. Const., amend. XIV, § 1 and 3) the Massachusetts Consumer Protection Act, M.G.L. c. 93A. Before the Court are cross-motions for summary judgment.

-1-

I.    **Background**

A.    **Factual Background**

Dennis Pines and Dennis Highlands are golf courses owned by the Town.  They are open to the public and anyone can become a member for a fee.  Membership includes privileges such as the ability to participate in various tournaments.  In 2007, the available tournaments included two women's events for two days of tournaments and five men's events for ten days of tournaments as well as mixed-gender events.  The individual defendants are (or were) employees of the Town and the golf courses, i.e., Canevazzi was the Town Administrator, Cummings is Director of Golf and Head Golf Course Superintendent, Penner was Director of Golf during part of 2007 and Champoux is the PGA Head Golf Professional.

Plaintiff is an avid golfer.  She was a member at the Town's golf courses from 1987 to 1994.  For the succeeding ten years, she was a member at the nearby Bass River Golf Club but, in 2005, returned as a member of the Town's courses.

The pending dispute arises out of the defendants' refusal to allow Joyce to play in a men's members-only tournament at Dennis Pines on May 5 and 6, 2007.  On April 20, 2007, Joyce signed up to play with her father in that event.  On May 2, 2007, three days before the tournament, Champoux called Joyce's father and told him that Joyce could not play but that he would still be allowed to participate if he found a male partner.  Champoux

-2-

reported that he was relaying a decision of the Golf Advisory Committee ("GAC") to keep that particular tournament limited to men.

The following day, Joyce emailed Canevazzi challenging the decision and stating that she would play by all the same rules as the male golfers.  Upon receipt of that email, Canevazzi contacted Cummings and several other individuals.  They confirmed the Town's tradition of conducting tournaments as reported to Joyce's father.  Canevazzi also acknowledged, however, that he was unsure whether the Town's policy was legal and thought that it should be reviewed.

Nonetheless, by that afternoon, Canevazzi concluded that Joyce's civil rights were not being violated and, accordingly, responded to Joyce's email upholding the tournament committee's decision.  He again noted the Town's history with respect to men's and women's tournaments and stated that he did not see a discriminatory practice in the Town's 2007 tournament schedule. Moreover, despite recognizing Joyce's concern, Canevazzi felt that to change the rules at such a late date would be unfair to other members who may or may not desire to play in a tournament with the rules revised according to Joyce's request.  He did, however, report that he was asking the GAC to consider the issue at its next meeting.

Before the GAC met to do so, two events foreshadowed its

-3-

ultimate decision.  First, after Canevazzi emailed Joyce, he spoke with Town Counsel who became "alarmed" and concerned that Joyce's exclusion from a men-only tournament could be perceived as discriminatory and recommended that the Town consider changing its policy.  Second, the defendants became aware that, two years earlier, in 2005, a GAC member apparently had stated that it was "difficult to justify" holding men-only tournaments.

In any event, as Canevazzi had promised, the GAC did reconsider its gender-based tournament rules.  On May 14, 2007, the GAC met and referred the issue to the Golf Tournament Subcommittee.  One month later, at a June 11, 2007 GAC meeting, the subcommittee reported its recommendation that no changes be made for the 2007 tournaments but that, beginning in 2008, all tournaments should include a men's and a women's field.  In October, 2007, the GAC went further and formally agreed to allow women to play in men's tournaments, as Joyce had originally requested.

### B.    Procedural History

On July 25, 2007, Joyce filed a complaint with the Massachusetts Commission Against Discrimination ("MCAD") against the Town and Canevazzi.  In November, 2007, after the respondents filed their position statement, Joyce withdrew her MCAD complaint.  Subsequently, on February 15, 2008, she filed her complaint in this Court.

-4-

Joyce moved for partial summary judgment in August, 2009. The defendants filed a cross-motion for summary judgment in October, 2009 and the following month Joyce opposed the defendants' cross-motion.

## II. **Analysis**

Joyce's complaint is divided by defendant but makes three general claims: 1) for violation of section 1 of the Fourteenth Amendment brought pursuant to 42 U.S.C. § 1983 (Counts I through V), 2) for violation of Massachusetts anti-discrimination statutes (Counts VI through X) and 3) for violation of the Massachusetts Consumer Protection Act (Count XI). She moves for summary judgment on all counts but seeks to preserve the issue of damages for trial. The defendants move for summary judgment on all counts. Each of the three general claims is considered in turn.

### A. **Federal Law Claims**

To analyze a claim under the Equal Protection Clause, the first step is to identify the classification at issue. That determination, in turn, informs the government's burden of proof. Certain laws or regulations distinguish among groups on their face. Others are facially-neutral but nonetheless disproportionately affect certain groups. With respect to the latter category, a viable Equal Protection claim exists only when the plaintiff can demonstrate that a disparate impact and

-5-

discriminatory intent nonetheless lie behind the facially-neutral law.  See, e.g., Pers. Adm'r of Mass. v. Feeney, 442 U.S. 256, 272-74 (1979).

The defendants focus their Equal Protection defense on this aspect.  According to the defendants, the Court need not engage in any scrutiny at all (and they need not advance any justification for their actions) because a valid Equal Protection claim must establish that women were treated differently from men and that such unequal treatment stemmed from a discriminatory intent.  Defendants maintain that, because Joyce cannot show that women were treated unequally, her claim fails.

The defendants are incorrect.  First, a showing of discriminatory intent is necessary to move a facially-neutral law or regulation into a higher tier of scrutiny.  By contrast, where a line is overtly drawn on the basis of gender, a suspect classification is established by definition and the analysis proceeds to scrutinize that classification.  Here, the tournament schedule and Joyce's subsequent preclusion from the men's event categorized participants by sex on its face.  Furthermore, construing the defendants' argument more liberally does not help them.  Specifically, the proposition that an Equal Protection claim requires proof of differential treatment or some disadvantage is a non-starter because here men and women were openly and officially treated differently.  Women could not play

-6-

in the May, 2007 tournament and, overall, women were afforded
fewer tournament opportunities (two days versus ten).

The Court, therefore, proceeds to analyze the defendants'
justifications for the classification.  Gender-based distinctions
are subject to intermediate scrutiny.  The Court must

> determine whether the proffered justification is
> "exceedingly persuasive."  The burden of justification is
> demanding and it rests entirely on the [defendants].  The
> [defendants] must show at least that the challenged
> classification serves important governmental objectives
> and that the discriminatory means employed are
> substantially related to the achievement of those
> objectives.  The justification must be genuine, not
> hypothesized or invented post hoc in response to
> litigation.  And it must not rely on overbroad
> generalizations about the different talents, capacities,
> or preferences of males and females.

United States v. Virginia, 518 U.S. 515, 532-33 (1996) (citations
and quotations omitted).

Here, plaintiff contends that the defendants provide no
justification capable of satisfying their burden.  The only
justification that Joyce identifies from the defendants is
history and tradition which she asserts is not an important
governmental objective (if it is even a legitimate one).  Joyce
also asserts that justifying the defendants' actions as providing
separate but equal opportunities is "archaic and backwards".

Defendants, under the mistaken impression that they need not
justify their actions, attempt to do so in one sentence:

> Alternatively, the defendants offer that the
> justification for the men's only tournaments is the
> existence itself of equal opportunity for women golfers

-7-

in terms of the women's only tournaments and the mixed gender tournaments.

That conclusory statement falls well short of showing an "exceedingly persuasive justification" for the defendants' conduct.  Indeed, it is not a justification at all but a reiteration of the question already answered (i.e., whether the treatment of women was unequal) and, as noted above, it was. Nor, for that matter, is an exceedingly persuasive justification as obvious with respect to the game of golf as opposed to football or some other contact sport.  In any event, the burden lies with the defendants, not the Court, and they have not met it here.

That finding does not, however, end the inquiry because more proof is required before any of the defendants can be held liable for a civil rights violation.

### 1.   The Town Defendants

A municipality may be held liable under 42 U.S.C. § 1983 for certain constitutional violations but not under a theory of respondeat superior.  Instead, liability attaches when the execution of the government's policy or custom, whether performed by its lawmakers or by those whose acts may fairly be said to represent official policy, inflicts the injury.  Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 692-94 (1978). There are several avenues available to plaintiffs seeking to hold a municipality liable.  When a plaintiff claims that a municipal

-8-

action itself violates federal law, however, the requisite proof
of fault and causation is straightforward.  Proof that an action
taken or directed by the municipality or its authorized
decisionmaker was unlawful necessarily establishes that the
municipal action has been shown to be the moving force behind the
injury of which the plaintiff complains and that the municipality
was at fault.  See generally Bd. of County Comm'rs of Bryan
County Okla. v. Brown, 520 U.S. 397, 403-05 (1997).

Here, Joyce contends that the Town defendants are liable
under several theories of municipal liability: 1) the decision
was the result of actions of Canevazzi, who had final
decision-making authority as Town Administrator, 2) Canevazzi was
upholding the decision of the GAC, which is a body with authority
delegated by the Town to set policy and 3) it was a long-
established custom to hold men-only tournaments.

Defendants respond that municipal liability is
unsustainable.  First, they maintain that Count I fails because
it does not specifically allege that Joyce's civil rights were
violated due to a policy or custom.  Second, focusing on
"custom", they contend that denying women access to tournaments
was not a widespread practice because Joyce was the first woman
to complain and thus be denied tournament admittance, and the
issue had not been previously considered by the defendants.  Nor,
defendants conclude, does Joyce demonstrate that the Town

-9-

defendants were "deliberately indifferent" and thus at fault.

Joyce prevails.  First, as she replies, a showing of deliberate indifference is only required when a claim does <u>not</u> involve an allegation that the municipal action itself violated federal law or directed/authorized the deprivation of federal rights.  Such a scenario, for example, would include an attempt to show that a facially lawful municipal action led an employee to violate a plaintiff's rights.  In that case, a plaintiff must demonstrate that the municipal action was taken with "deliberate indifference" to its known or obvious consequences.  <u>See</u> <u>Bd. of County Comm'rs</u>, 520 U.S. at 406-12.  This case involves allegations that municipal action itself was unlawful and thus a showing of deliberate indifference is not required.

Moreover, Joyce's complaint plainly alleges that a Town policy or custom was at issue.  The Town defendants were responsible for denying Joyce entry into the May, 2007 men's tournament due to a longstanding policy and practice to hold such events and individuals with the requisite authority carried out that policy with respect to the tournament in question.  In fact, the defendants admit various factual allegations that refer to a "policy" and "historical practice" of limiting certain events by gender.  The Town defendants are, therefore, liable for certain federal law violations.

## 2.   The Individual Defendants

The individual defendants contend that they are not liable because 1) they were not sued in their individual capacities and a suit against them in their official capacities is akin to a suit against the Town and 2) even if they were sued in their individual capacities, they are entitled to qualified immunity.

With respect to the first point, Joyce responds that, notwithstanding her complaint, her claims should proceed against the defendants in their individual capacities because they "were all served individually by waiver of service of summons".  Joyce cites no authority for this proposition.  With respect to qualified immunity, Joyce contends that the right to be free from overt sex discrimination is well-established and thus, although no case has previously presented the same facts as this one, the contours of the relevant rights are well-enough defined to preclude a finding of qualified immunity.

The individual defendants have the better argument here and summary judgment will enter in their favors on Counts II-V.  With respect to the capacity argument, when a complaint does not specify the capacity in which an individual is sued, the First Circuit invokes a "course of proceedings test" under which

> courts are not limited by the presence or absence of language identifying capacity to suit [sic] on the face of the complaint alone.  Rather, courts may examine the substance of the pleadings and the course of proceedings in order to determine whether the suit is for individual or official liability.

<u>Powell</u> v. <u>Alexander</u>, 391 F.3d 1, 22 (1st Cir. 2004).  This case
and Joyce's complaint focus on a Town policy and practice invoked
to deny her entry into the May, 2007 men's tournament.  <u>See</u> <u>Biggs</u>
v. <u>Meadows</u>, 66 F.3d 56, 61 (4th Cir. 1995) (cited in <u>Powell</u>)
(stating that "the plaintiff's failure to allege that the
defendant acted in accordance with a governmental policy or
custom, or the lack of indicia of such a policy or custom on the
face of the complaint" indicates a personal capacity suit).
Moreover, Joyce explicitly refers, in Counts II-V of her
complaint, to the individual defendants as "state actors".  Thus,
although some factors are counter-indicative, Joyce's claims are
best described as targeting the defendants in their official
capacities and, therefore, are merely duplicative of Count I.
<u>E.g.</u>, <u>Center for Bio-Ethical Reform, Inc.</u> v. <u>Los Angeles County</u>
<u>Sheriff</u>, 533 F.3d 780, 799 (9th Cir. 2008).

      Alternatively, even assuming that Joyce may proceed against
the individual defendants in their personal capacities, they are
entitled to qualified immunity.  Such immunity is determined by a
two-part test: 1) whether the facts alleged or shown by the
plaintiff make out a violation of a constitutional right and 2)
if so, whether the right was "clearly established" at the time of
the defendant's alleged violation.  <u>Maldonado</u> v. <u>Fontanes</u>, 568
F.3d 263, 268-69 (1st Cir. 2009).  In analyzing the second prong,
the "salient question is whether the state of the law at the time

of the alleged violation gave the defendant fair warning that his particular conduct was unconstitutional". Id. at 269.

Joyce frames the relevant right too broadly. Of course, any reasonable official should know that Joyce had the "right to be free from invidious gender discrimination in a place of public accommodation". The defendants, however, did not act invidiously. Nor was the resolution of Joyce's complaint sufficiently clear to a reasonable defendant under the circumstances of this case. As the defendants acknowledge, there is no directly analogous precedent, the closest being Wanders v. Bear Hill Golf Club, Inc., No. 97-1458, 1998 WL 1181150 (Mass. Super. Ct. Nov. 30, 1998), and the defendants were careful to schedule men's and women's tournaments on weekends so as to comply with the holding in that case.

Moreover, men and women are often constitutionally separated in sports and, believing that (at least until a complaint had been lodged) they were offering equally-desirable opportunities to each gender, the defendants reasonably believed that they were acting lawfully. When a complaint was filed, they chose not to disrupt their practice by changing the rules two days before the tournament. Instead, they promised to reassess their policy and, thereafter, changed it. Finally, it bears emphasizing that the holding in this case results from defendants' failure to advance a persuasive justification for their acts, not necessarily

-13-

because no such justification exists.[1]

Accordingly, the Court will enter summary judgment in favor of the individual defendants on Counts II-V.

**B.    State Law Anti-Discrimination Claims**

**1.    Legal Standard**

To establish a claim for gender discrimination under Massachusetts law, a plaintiff must show that the defendant made, aided or incited a distinction, discrimination or restriction on account of sex which denied the plaintiff admission to (or related to the plaintiff's treatment in) a place of public accommodation as defined in M.G.L. c. 272, § 92A.  M.G.L. c. 272, § 98.

Section 92A defines a public accommodation as "any place ... which is open to and accepts the patronage of the general public".  M.G.L. c. 272, § 92A.  Massachusetts courts have applied this provision to private clubs and consider various factors, the most important of which is often the absence of genuine selectivity in membership.  <u>Concord Rod and Gun Club, Inc.</u> v. <u>Mass. Comm'n Against Discrimination</u>, 524 N.E.2d 1364,

---

[1]  To that end, the Court carefully limits its holding to the circumstances of this case.  What is critical here is that the burden lies with the defendants to justify their conduct and they have not done so.  This decision does not require all public golf courses to have all mixed-gender tournaments.  Instead, it establishes that when the defendants draw a clear distinction based upon gender and their only explanation is to deny that any distinction existed, they will not prevail.

1367 (Mass. 1988).  See also Soltys v. Wellesley Country Club,
No. 0000050, 2002 WL 31998398, at *6 (Mass. Super. Ct. Oct. 28,
2002).  The provision should be construed liberally and
inclusively.  Concord, 524 N.E.2d at 1367.

### 2.   Application

#### a.   Defendants Dennis Pines, Dennis Highlands, Cummings, Penner and Champoux

Defendants begin by arguing that summary judgment should
enter in favor of all defendants except the Town and Canevazzi on
Counts VI and VIII-X because those defendants were not named in
the MCAD complaint.  Plaintiff responds that a "rigid adherence
to formality is not required".  In particular, citing to Chatman
v. Gentle Dental Center of Waltham, 973 F. Supp. 228, 232-36 (D.
Mass. 1997), plaintiff contends that an MCAD complaint must only
put a defendant on notice and that Joyce's complaint did so for
all defendants.

Plaintiff's response is persuasive.  As an initial matter,
neither of the cases cited by the defendants concerns a
discrimination claim brought under M.G.L. c. 272, § 98.  In any
event, considering the MCAD complaint as a whole pursuant to
Chatman, the charge contains enough to have put all of the
defendants on notice of Joyce's allegations.  It explicitly
states that Joyce was discriminated against by the Town and
Dennis Pines.  Moreover, it mentions all of the individual
defendants and Section 98 holds liable any party who

-15-

discriminates or distinguishes on the basis of sex or aids or
incites the same.  M.G.L. c. 272, § 98.  In fact, both cases
cited by the defendants acknowledge a possible exception to
statutory exhaustion requirements where an unnamed defendant has
notice of the MCAD complaint.  Butner v. Dep't of State Police,
461, 803 N.E.2d 722, 728 n.14 (Mass. App. Ct. 2004); King v.
First, 705 N.E.2d 1172, 1173-74 (Mass. App. Ct. 1999).  Because
Joyce has, unlike the plaintiffs in those cases, made such a
showing (or has at least established that disputed facts exist on
the issue), the Court will deny defendants' motion for summary
judgment on this basis.

### b.   All Defendants

Joyce opens with a straightforward argument for liability:
the Town-owned golf courses are public accommodations, the
defendants made a distinction on account of sex in excluding her
from the tournament at Dennis Pines and, therefore, they are
liable.  Joyce also cites several cases in which clubs and golf
courses were found liable for gender discrimination.

Defendants respond that 1) the text of § 98 requires
plaintiff to show a denial of "full and equal accommodations"
which Joyce cannot establish, 2) cases cited by Joyce either are
distinguishable or actually support the defendants, 3) the
tournament was a "non-public enclave" held at a public
accommodation and 4) Joyce must show differential treatment and

there was none here.

None of defendants' arguments is convincing.  With respect to the first point, M.G.L. c. 272, § 98 states that

> All persons shall have the right to the full and equal accommodations, advantages, facilities and privileges of any place of public accommodation . . . .

It does not follow, however, as defendants appear to contend, that this statement endorses a "separate but equal" exception to the statute's otherwise clear prohibition of gender distinctions or discrimination.  Defendants cite no case law for the proposition that this statutory provision requires a plaintiff to prove that she was denied full and equal accommodations or the like.  Such an interpretation would contort the statutory pronouncement of a right into an added requirement for plaintiffs claiming its benefit.  Instead, the better reading is that the particular sentence explains the intended result of the provision's prohibition on discrimination.

Similarly, defendants fail to demonstrate that Joyce must show differential treatment.  In support of this argument, defendants rely heavily on Thomka v. Mass. Interscholastic Athletic Ass'n, Inc., No. 051028, 2007 WL 867084 (Mass. Super. Ct. Feb. 12, 2007).  The cited portion of that opinion, however, refers to the Equal Rights Amendment of the Massachusetts Constitution and nowhere does Thomka consider M.G.L. c. 272, § 98.  The case is therefore inapposite.

-17-

In any event, even entertaining the defendants' repeated plea for a "separate but equal" analysis, men and women were afforded unequal playing opportunities under the Town's tournament schedule.  In particular, there were ten days of tournament play for men compared to only two days for women. Defendants attempt to justify that fact by pointing to a lower level of interest from female members.  Their justification, however, supports Joyce's argument because the obvious solution was not to schedule ten days of women's tournaments for uninterested members but rather simply to let Joyce play in men's events.  Moreover, the fact that Joyce was the first female member to complain, as defendants emphasize, is irrelevant because it establishes nothing about whether the tournament schedules were unequal or discriminatory or whether other women held the same beliefs in silence.

Nor is the Court persuaded that the tournament was a "non-public enclave" exempting the Town's courses from their obvious status as public accommodations.  Defendants rely on Donaldson v. Farrakhan, 762 N.E.2d 835 (Mass. 2002) but that case is entirely distinguishable, as Joyce aptly demonstrates.  Indeed, the fact that Massachusetts courts have applied M.G.L. c. 272, § 98 to tournaments at a private golf club, e.g., Wanders v. Bear Hill Golf Club, Inc., No. 97-1458, 1998 WL 1181150 (Mass. Super. Ct. Nov. 30, 1998), surely supports the conclusion that it applies in

this case.

Finally, the cases relied on by both parties are not quite on all fours.  Several do not address M.G.L. c. 272, § 98.  E.g., Thomka, 2007 WL 867084; Yolles v. Golf Club of Avon, Inc., No. CV000802636, 2004 WL 203325 (Conn. Super. Ct. Jan. 6, 2004).  The others are factually inapposite.  E.g., Wanders, 1998 WL 1181150 (men's tournaments held on weekends while women's were held on weekdays); Borne v. Haverhill Golf & Country Club, Inc., 791 N.E.2d 903 (Mass. App. Ct. 2003); Concord, 524 N.E.2d 1364. Despite the considerable attention afforded by the parties to these cases, the Court, therefore, declines to engage in any substantial analysis of them.

Absent any persuasive authority to the contrary, the Court looks to the statutory language.  It prohibits any distinction, discrimination or restriction on account of sex in a place of public accommodation.  The defendants' actions in barring Joyce from the May, 2007 men's tournament fits comfortably within those terms and, therefore, violated the state statute.  Accordingly, Joyce's motion for summary judgment on Counts VI-X will be allowed and defendants' cross-motion for summary judgment will be denied.

### C.   Chapter 93A

Both parties make various arguments for and against summary judgment on plaintiff's claim under the Massachusetts Consumer

Protection Act (M.G.L. c. 93A). Most need not be addressed, however, and the Court will enter summary judgment in defendants' favor for several reasons. First, Massachusetts courts have not yet had "an occasion to decide whether a municipality may in some circumstances be amenable to the provisions of G.L. c. 93A". Park Drive Towing, Inc. v. City Of Revere, 809 N.E.2d 1045, 1050-51 (Mass. 2004) (citation and quotation omitted). Second, Chapter 93A does not apply to disputes that are principally "private in nature" and that principle has been applied to bar liability in a dispute concerning the relationship between a golf club and its members. Soltys, 2002 WL 31998398, at *10. Nor do defendants' actions strike the Court as "immoral, unethical, oppressive, or unscrupulous" so as to fall under Chapter 93A's "unfair and deceptive" proscription. E.g., Ellis v. Safety Ins. Co., 672 N.E.2d 979, 986 (Mass. App. Ct. 1996).

Finally, and perhaps most importantly, Joyce is "not without an alternative method of obtaining relief". Riseman v. Orion Research Inc., 475 N.E.2d 398, 400 (Mass. 1985) (declining to extend M.G.L. c. 93A to a situation in which other statutory avenues existed for relief). The fact that Massachusetts has a statute to cover precisely the conduct alleged here (i.e., a distinction or discrimination in a place of public accommodation) weighs against expanding the reach of Chapter 93A to accomplish an identical task. As just stated, its applicability to this

-20-

dispute is tenuous at best.  Thus, although the same conduct
obviously can give rise to liability under more than one law, the
existence and aptness of M.G.L. c. 272, § 98 strongly mitigates
against imposing liability under Chapter 93A.

Accordingly, with respect to Count XI, the Court will deny
plaintiff's motion for summary judgment and allow defendants'
cross-motion for the same.

**ORDER**

In accordance with the foregoing,

1)      plaintiff's motion for summary judgment (Docket No. 32)
        is, with respect to Counts I and VI-X **ALLOWED**, and,
        with respect to Counts II-V and XI, **DENIED**; and

2)      defendants' cross-motion for summary judgment (Docket
        No. 38) is, with respect to Counts II-V and XI,
        **ALLOWED**, and, with respect to Counts I and VI-X **DENIED**.

**So ordered.**

                                /s/ Nathaniel M. Gorton
                                Nathaniel M. Gorton
                                United States District Judge

Dated March 30, 2010