United States District Court
District of Massachusetts

|  |  |
|---|---|
| ELAINE JOYCE,<br>      Plaintiff,<br><br>      v.<br><br>TOWN OF DENNIS, DENNIS PINES<br>GOLF COURSE, DENNIS HIGHLANDS,<br>ROBERT CANEVAZZI, MICHAEL<br>CUMMINGS, DENNIS PENNER and<br>RUSSELL CHAMPOUX,<br>      Defendants. | Civil Action No.<br>08-10277-NMG |

**MEMORANDUM & ORDER**

GORTON, J.

Plaintiff Elaine Joyce ("Joyce") brought suit against the Town of Dennis ("the Town"), two Town-owned golf courses and several individual defendants for gender discrimination. Before the Court is plaintiff's emergency motion for sanctions.

## I. Background

This dispute arises out of the defendants' refusal to allow Joyce to play in a men's members-only golf tournament at a Town-owned golf course in 2007. Despite barring Joyce from that tournament, Joyce's desire to play in the men's tournament caused the Town to review its policy. Later that year, the Golf Advisory Committee ("GAC") recommended that, beginning in 2008, all tournaments would include a men's and a women's field. In October, 2007, the GAC went further and formally agreed to allow

-1-

women to play in men's tournaments, as Joyce had originally requested.

Notwithstanding that resolution, Joyce filed her complaint in this case in February, 2008. About 18 months later, the parties filed cross motions for summary judgment with respect to liability. In March, 2010, this Court issued a Memorandum and Order ("the March, 2010 M&O") finding certain defendants liable on six of eleven counts and the case now awaits only a determination of damages, if any.

The March, 2010 M&O was met with some media attention. A few articles appeared in newspapers and the case was also discussed on the radio and the internet. The initial impetus for such coverage was Joyce, who apparently hired a publicist in connection with her lawsuit back in 2008. A few members of the media pursued the story, however, and contacted counsel for the defendants, Attorney Leonard Kesten ("Attorney Kesten"). Attorney Kesten expressed his view of the case and, in doing so, disclosed a settlement demand from Joyce and made other allegedly inappropriate or misleading comments. As a result, Joyce has filed an emergency motion for sanctions which defendants have opposed.

II. **Analysis**

    A.   **Statements to the media**

Two sets of rules pertain to extrajudicial statements made

during pending litigation. First, Local Rule 83.2A prohibits any lawyer associated with a civil action from

> mak[ing] or participat[ing] in making an extrajudicial statement, other than a quotation from or reference to public records, which a reasonable person would expect to be disseminated by means of public communication if there is a reasonable likelihood that such dissemination will interfere with a fair trial and which relates to ... [h]is opinion as to the merits of the claims or defenses of a party ... [or a]ny other matter reasonably likely to interfere with a fair trial of the action.

Similarly, the Massachusetts Rules of Professional Conduct contain a provision regarding trial publicity. It bars a lawyer from making

> an extrajudicial statement that a reasonable person would expect to be disseminated by means of public communication if the lawyer knows or reasonably should know that it will have a substantial likelihood of materially prejudicing an adjudicative proceeding in the matter.

Mass. R. Prof. C. 3.6(a). The provision also lists several subjects about which it is permissible to speak (none of which pertains here) and allows a lawyer to make

> a statement that a reasonable lawyer would believe is required to protect a client from the substantial undue prejudicial effect of recent publicity not initiated by the lawyer or the lawyer's client [and which is] limited to such information as is necessary to mitigate the recent adverse publicity.

Id. at 3.6(c).

The Comments to Rule 3.6 elaborate. Comment 5 states that:

> certain subjects ... are more likely than not to have a material prejudicial effect on a proceeding, particularly when they refer to a civil matter triable to a jury ... [including] information that the lawyer knows or

> reasonably should know is likely to be inadmissible as evidence in a trial and that would, if disclosed, create a substantial risk of prejudicing an impartial trial ....

Comment 6 adds that the nature of the proceeding is relevant in determining prejudice and civil trials "may be less sensitive" than criminal trials. Finally, Comment 7 provides that

> extrajudicial statements that might otherwise raise a question under this Rule may be permissible when they are made in response to statements made publicly by another party [or] another party's lawyer ....

Here, Joyce moves for sanctions on the grounds that Attorney Kesten improperly told the media 1) that Joyce had made a $500,000 settlement demand and 2) that any monetary judgment in Joyce's favor would be paid for by the Town's taxpayers. With respect to the settlement demand, Joyce contends that it was disclosed willfully in order to prejudice her unfairly in the eyes of the public. She asserts that the settlement offer would be inadmissible pursuant to Fed. R. Evid. 408 and that a failure to punish Attorney Kesten's behavior would send a message to all litigants that settlement demands cannot be made with any expectation of privacy. With respect to the second statement, Joyce suggests that the Town has an insurance agreement in place to cover all or part of any monetary judgment against the Town and, accordingly, Attorney Kesten's statement was a misrepresentation "the only purpose of which [was] to attempt to improperly influence the potential finders of fact in the upcoming jury trial".

Joyce argues that "there can be little doubt" that both statements of Attorney Kesten violated Mass. R. Prof. C. 3.6. She maintains that they were made knowing that there is a substantial likelihood that they could materially prejudice the pending jury trial, that they were not required to protect the defendants from any undue prejudicial effect of publicity and that they were beyond the scope of what would be necessary to mitigate any adverse publicity.  Joyce also adds that this Court has inherent power to punish bad faith or unethical conduct.

Defendants respond that Attorney Kesten did nothing improper and, at most, tried to set the record straight as contemplated by Mass. R. Prof. C. 3.6(c).  They contend that Joyce's pattern of behavior demonstrates that she is "interested in the limelight" and reiterate their belief that this litigation was unnecessary from the outset because the Town quickly changed its golf tournament policy.

Defendants contend that plaintiff's only colorable argument concerns the applicability of Mass. R. Prof. C. 3.6.  In that regard, they say Joyce has not shown that the statements have a substantial likelihood of materially prejudicing the proceedings because counsel's remarks were "nothing more than verbal volleys back at the plaintiff, who has been serving the whole game". Defendants point out that Joyce was the one who retained a publicist and sought to sell her one-sided story to the press.

The Town purportedly did not notify the press about the Court's rulings and, when its counsel was contacted by the press, he simply shared his view of the matter.

Joyce's motion will be denied because she has not shown that the statements had a reasonable or substantial likelihood of materially prejudicing or interfering with a fair trial. The entire premise for her claim of prejudice is that Attorney Kesten's statements are likely to influence the jury trial on damages by ridiculing Joyce and souring public opinion.

That proposition is unpersuasive. First, there is no reason to believe that press coverage will engender prejudice because the statements were made months before any trial, this case is not widely publicized and the Court can mitigate any potential prejudice through jury voir dire and jury instructions. Moreover, defendants correctly observe that they did not seek out media coverage which apparently was non-existent before Joyce solicited it. Indeed, having initiated the media coverage, Joyce should reasonably have anticipated the possibility of a lively response.

To be sure, Attorney Kesten's conduct was not exemplary, even if he did not initiate the media coverage. In fact, Comment 5 to Massachusetts Rule of Professional Conduct 3.6 explicitly lists information that "is likely to be inadmissible as evidence in a trial" as being more likely to cause prejudice and

settlement offers are often inadmissible. That same comment, however, also suggests that an offending statement must create a substantial risk of prejudicing an impartial trial and the Court finds that the subject statements in this case do not create such a risk.

Nonetheless, the Court recognizes the risks of continued derogatory exchanges in the public domain and, because of that, directs both parties henceforth to refrain from trying their cases in the media. If the practice persists, the Court will impose sanctions and/or issue an order barring such statements going forward.

### B.  Allegedly frivolous filings

Although not the focus of her motion, Joyce also contends that Attorney Kesten violated Fed. R. Civ. P. 11. In his comments to the media, Attorney Kesten stated that this Court's ruling was correct and that no appeal was planned. Because defendants previously opposed Joyce's motion for summary judgment and, in fact, filed a cross motion for summary judgment, Joyce argues that "it defies common sense to infer that counsel honestly and in good faith held a different belief when he filed the voluminous papers [along those lines]". Accordingly, Joyce asserts that defendants' pleadings must have been filed "to engage in vexatious litigation on uncontested issues".

Plaintiff's contention lacks merit. There is no evidence

that Joyce complied with the so-called safe harbor provision of Fed. R. Civ. P. 11(c)(2) which requires the moving party to serve a separate motion for Rule 11 sanctions on counsel and to allow the accused party 21 days to withdraw or correct the challenged pleading before submitting the motion to the Court.  Furthermore, the Court finds that defendants' cross motion for summary judgment did not violate Rule 11 regardless of what counsel said to the media after this Court's decision.

### ORDER

In accordance with the foregoing, plaintiff's emergency motion for sanctions (Docket No. 50) is **DENIED**.

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated August 18, 2010