United States District Court
District of Massachusetts

```
_____
                                )
ELAINE JOYCE,                   )
                                )
            Plaintiff,          )
                                )
       v.                       )
                                )    Civil Action No.
TOWN OF DENNIS, DENNIS PINES    )    08-10277-NMG
GOLF COURSE, DENNIS HIGHLANDS,  )
ROBERT CANEVAZZI, MICHAEL       )
CUMMINGS, DENNIS PENNER and     )
RUSSELL CHAMPOUX,               )
                                )
            Defendants.         )
_____     )
```

**MEMORANDUM & ORDER**

GORTON, J.

Plaintiff Elaine Joyce ("Joyce") brought suit against the Town of Dennis ("the Town"), two Town-owned golf courses and several individual defendants for gender discrimination. This dispute arose out of the defendants' refusal to allow Joyce to play in a men's members-only tournament at Dennis Pines Golf Course in May, 2007. The case is currently on remand from the First Circuit Court of Appeals for reconsideration of 1) the size of the award of attorneys' fees to Joyce's counsel and 2) the propriety of permanent injunctive relief.

**I.   Background**

The facts of this case have been described at length in previous Orders issued by this Court (Docket Nos. 49, 52, 58 and

110) and by the First Circuit Court of Appeals in <u>Joyce</u> v. <u>Town of Dennis</u>, 720 F.3d 12 (1st Cir. 2013).  The following are the salient facts for the purpose of this Memorandum and Order.

Joyce filed her Complaint in February, 2008 and the parties subsequently filed cross-motions for summary judgment.  In March, 2010, this Court found that defendants were liable on six of the eleven counts, and dismissed the other five counts.  It found in Joyce's favor with respect to her claims that 1) the Town defendants violated her rights under the Equal Protection Clause of the Fourteenth Amendment and 2) both Town and individual defendants violated Massachusetts anti-discrimination laws.  It dismissed Joyce's claims under 42 U.S.C. § 1983 against individual defendants and her claim arising under the Massachusetts Consumer Protection Act, M.G.L. c. 93A.  The Court subsequently denied Joyce's emergency motion for sanctions based on statements made by defendants' counsel to the media concerning the case and a purported settlement offer.

In light of the impending trial on damages, the Court in a January, 2011 declined to instruct the jury on punitive damages but announced its intent to award reasonable attorneys' fees to Joyce as the prevailing party following the jury trial.  Joyce rejected a settlement offer of $35,001 in February, 2011, and a jury awarded Joyce $15,000 in compensatory damages after a five-day trial in March, 2011.

After trial, Joyce petitioned the Court for $167,855 in legal services and $4,993 in costs.  She also sought injunctive relief requiring defendants to take specific actions to prevent gender discrimination at Town-owned golf courses.  The Court denied her motion for injunctive relief and awarded $30,000 in fees and $4,600 in costs.

Joyce appealed that Order and the decision not to give a punitive damages charge to the First Circuit and the defendants cross-appealed the attorney fees award.  In June, 2013, the First Circuit affirmed the punitive damages ruling but vacated the attorneys' fees award and denial of injunctive relief and remanded for further proceedings.

## II.  Attorney Fees and Costs

### A.  Legal Standard

The basic measure of reasonable attorney's fees in civil rights cases under Mass. Gen. Laws ch. 151B, § 9 is a "fair market rate for time reasonably spent preparing and litigating a case". Fontaine v. Ebtec Corp., 613 N.E.2d 881, 891 (Mass. 1993).  The First Circuit has adopted the two-step lodestar method for calculating a reasonable fee. Torres-Rivera v. O'Neill-Cancel, 524 F.3d 331, 336 (1st Cir. 2008).  First, the lodestar figure is calculated by multiplying the number of hours reasonably and productively expended on the litigation by a reasonable hourly rate. Hensley v. Eckerhart, 461 U.S. 424, 433

-3-

(1983).  Second, the court may adjust the lodestar up or down
based on factors such as

> the nature of the case and issues presented, the time
> and labor required, the amount of damages involved,
> the result obtained, the experience, reputation and
> ability of the attorney, the usual price charged for
> similar services by other attorneys in the same area
> and the amount of awards in similar cases.

Haddad v. Wal-Mart Stores, Inc., 920 N.E.2d 278, 281 (Mass.
2010) (rescript) (quoting Linthicum v. Archambault, 398 N.E.2d
482, 488 (Mass. 1979), overruled in part on other grounds by
Knapp Shoes, Inc. v. Sylvania Shoe Mfg. Corp., 640 N.E.2d 1101,
1104-05 (Mass. 1994)).  The burden of proving the reasonableness
of the requested fees to be awarded falls upon the applicant.
Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984).

### B.   Opinion of the First Circuit

On appeal, the First Circuit vacated this Court's award of
$30,000 in attorneys' fees and $4,600 in costs.  It found that
this Court had underestimated the amount of success Joyce
obtained by virtue of its rulings that a Town-owned golf course
is a "public accommodation" under Massachusetts law and
rejecting the defendants' arguments for a "separate but equal"
exception and had further given too little weight to the policy
choice underlying fee-shifting statutes in linking attorneys'
fees to the jury's relatively modest damages award of $15,000.
It also held that it was improper to give any weight to Joyce's

-4-

refusal to accept the Town's settlement offer of $35,001.  It remanded to this Court for reconsideration of a reasonable fee in light of its holding.

## C. Application

Upon consideration of the First Circuit's opinion and the submissions of the parties, the Court will award $87,287 in attorneys' fees.  The court is not convinced that the $167,855 in fees requested by Joyce is reasonable in light of the time and labor required to litigate the case, the result obtained and the nature of the legal and factual questions at issue. See Haddad, 920 N.E.2d 278, 281 (Mass. 2010).

### 1. Compensable time

First, the Court will subtract $46,624 from the lodestar to account for areas in which the amount of time expended was unreasonable or unnecessary. See id. at 283-84.  As the Court noted in its previous order, Joyce's counsel spent excessive time briefing motions for summary judgment, petitioning for attorneys' fees and injunctive relief and responding to the defendants' cross-motion for summary judgment. See Berman v. Linnane, 748 N.E.2d 466, 469 (Mass. 2001) (reducing hours used to calculate lodestar in light of unnecessary and repetitive work).  As a result, it finds that counsel are entitled to 75% of the hours claimed with respect to those motions and, as result, will subtract approximately $15,000 from the lodestar.

-5-

The Court will also subtract approximately $8,000, or about 50% of the amount billed for conferencing, to account for its previous finding that Joyce's counsel spent excessive time conferencing with each other about the case.

The Court remains convinced, moreover, that it was unnecessary for two experienced trial attorneys each to attend the entire trial, especially when the Court had already determined that defendants were liable and trial was limited to whether Joyce was entitled to compensatory damages for emotional distress. See Lipsett v. Blanco, 975 F.2d 934, 938 (1st Cir. 1992) ("As a general matter, the time for two or three lawyers in a courtroom or conference, when one would do, may obviously be discounted." (citations and internal quotation marks omitted)).  It will therefore reduce the number of hours that Attorney Studen and Attorney Murray billed during the trial by 50% each.  The Court will not, however, reduce the number of hours claimed pre-trial as many overlap with the motions addressed above, and therefore Attorney Studen and Attorney Murray will be compensated for significantly more than 50% of the total time spent on the case as a whole.

On the other hand, the time spent on the unsuccessful motion for sanctions will not be factored into the lodestar. The motion was filed after Joyce prevailed on many of her claims at the summary judgment stage and nearly one year before trial

-6-

on damages and, moreover, was based on conduct by the Town's attorney rather than the discriminatory conduct of the defendants. As a result, the unsuccessful motion was insufficiently related to the success plaintiff obtained at either stage and the Court will deduct approximately $8,800 accordingly. Cf. Alfonso v. Aufiero, 66 F. Supp. 2d 183, 194-95 (D. Mass. 1999) (denying compensation for malicious prosecution claim that stemmed from set of events that were "distinct" from the events underlying the successful claims).

### 2.   Hourly rates

The Court will further reduce the lodestar by 10% on the basis that the claimed hourly rates are insufficiently supported and are high compared with rates awarded to similarly experienced attorneys. See Gay Officers Action League v. Puerto Rico, 247 F.3d 288, 296 (1st Cir. 2001) ("[T]he court may take guidance from, but is not bound by, an attorney's standard billing rate.").

First, Joyce has not provided sufficient evidence to corroborate her claims that the hourly rates she used to calculate the lodestar amount reflect the prevailing rates in the community. See Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984) ("[T]he burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those

prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."). First, she provided no information with respect to the experience and skill level for the associates who contributed significant work to the case.

Furthermore, this Court is not bound to accept the conclusions of the Massachusetts trial court judge who found the rates charged by attorneys at Burns & Levinson, including Attorney Studen's rate of $525 per hour, to be reasonable. Moreover, defendant presents convincing evidence that the prevailing rate in discrimination cases in the Boston area is significantly lower than the rates charged by Joyce's counsel. See, e.g., Fryer v. A.S.A.P. Fire & Safety Corp., Inc., 750 F. Supp. 2d 331, 338-40 (D. Mass. 2010) (finding hourly rates of $325 and $350 reasonable for attorneys with comparable experience and credentials).

### 3.   Other adjustments

Finally, the Court will decrease the resulting lodestar amount of $109,108 by an additional 20% to $87,287.  Such a reduction is warranted by the fact that this case involved a relatively straight-forward fact pattern and legal theory. Furthermore, while the First Circuit vacated the previous fee award in part because it found that plaintiff attained greater success than her relatively small damages award would indicate,

the success emphasized by the First Circuit was achieved at the summary judgment stage rather than at the jury trial on damages nearly one year later.

This Court deems significant the fact that, to the extent it is able to decipher the convoluted bills presented, Joyce's attorneys spent only slightly more time between the filing of the case in February, 2008, and entry of summary judgment in Joyce's favor on most of her claims in March, 2010, than they spent thereafter pursuing monetary damages.  The Court finds that it is fair to reduce the total fee award where a substantial amount of legal fees were incurred with respect to Joyce's individual damages claim, on which she was largely unsuccessful, after she had obtained summary judgment on the issue of broader import to the public. Cf. Killeen v. Westban Hotel Venture, LP, 872 N.E.2d 731, 792 (Mass. App. Ct. 2007) (explaining that it is reasonable to reduce compensable hours if the time spent was "wholly disproportionate to the interests at stake" (quoting Stratos v. Dep't of Pub. Welfare, 439 N.E.2d 778, 786 (Mass. 1982)).

### 4.   Costs

Joyce previously requested $4,993 in costs.  This Court awarded $4,600 after excluding 1) $164 in costs incurred after Joyce rejected the February, 2011 settlement offer and 2) non-compensable costs for parking, taxis, meals and "stenographic

overtime". The First Circuit Court of Appeals did not expressly vacate that award along with the award of attorneys' fees. Nevertheless, this Court assumes that the First Circuit's holding that it was improper to take into account the rejected settlement offer when awarding attorneys' fees applies to costs as well. As a result, it will award $4,764 in costs.

### III. **Injunctive Relief**

The First Circuit vacated the denial of injunctive relief on the grounds that the Court had not conducted the necessary four-factor inquiry and, in particular, had failed to examine whether the plaintiff would suffer irreparable harm in the absence of an injunction. The Court will therefore consider whether the following prerequisites are satisfied:

> (1) plaintiff[] prevailed on the merits; (2) plaintiff[] would suffer irreparable injury in the absence of injunctive relief; (3) the harm to plaintiff[] would outweigh the harm the defendant[s] would suffer from the imposition of an injunction; and (4) the public interest would not be adversely affected by an injunction.

Asociacion de Educacion Privada de P.R., Inc. v. García-Padilla, 490 F.3d 1, 8 (1st Cir. 2007).

The First Circuit reasoned that Joyce "easily satisfies" the first, third and fourth requirements, leaving only the issue of whether or not she would suffer irreparable injury in the absence of injunctive relief. Joyce, 720 F.3d at 25. After reconsidering the record, the Court agrees with the First

-10-

Circuit that those three requirements are satisfied and finds,
with respect to the remaining requirement, that it is possible
that Joyce will suffer future discrimination.

    To demonstrate the prospect of future harm justifying
permanent equitable relief, the First Circuit requires
plaintiffs to demonstrate more than the fact that they were
injured by an unlawful practice in the past. Steir v. Girl
Scouts of the USA, 383 F.3d 7, 16 (1st Cir. 2004) (citing O'Shea
v. Littleton, 414 U.S. 488, 495-96 (1974)).  Furthermore,

> [i]t is not enough for a plaintiff to assert that she
> "could be" subjected in the future to the effects of
> an unlawful policy or illegal conduct by a defendant--
> the prospect of harm must have an "immediacy and
> reality."

Id. (quoting Golden v. Zwickler, 394 U.S. 103, 109 (1969)).

    The question of whether plaintiff is likely to face future
illegal discrimination is worth further exploration.  On the one
hand, the defendants have already adopted and disseminated the
policy that Joyce demanded.  Specifically, the Golf Advisory
Committee ("GAC"), which is the volunteer group responsible for
course policies at the Town-owned golf courses, adopted United
States Golfing Association ("USGA") rules that allow women to
play in all events so long as they play from the same tees as
other competitors and adjust their handicaps accordingly.
Furthermore, GAC voted to adopt that policy in October, 2007,
less than six months after the tournament from which Joyce was

-11-

excluded.  It also contacted Joyce on multiple occasions to invite her to meetings about changing the rules.

On the other hand, there is evidence that the policy change was implemented deliberately and, perhaps, begrudgingly.  The Chairman of the GAC initially told Joyce that he thought there were equal opportunities for men and women to play in tournaments according to the 2007 schedule, which was not the case.  The Town made no change to the 2007 tournament schedule and the Tournament Committee, a subset of the GAC, initially recommended adding a women's field to every tournament during the 2008 season rather than making tournaments gender-neutral. Moreover, the Town vigorously litigated the case and maintained throughout that it had no obligation to offer gender-neutral tournaments.

The Town's initial dissemination of its change in policy was also problematic.  It did not make a general announcement to all members and instead included a statement in the 2008 Tournament Information Packet that said that "[a]ll tournaments will follow USGA guidelines for participation."  The Town Administrator, Robert Cavenazzi, acknowledged that he would not have understood from that statement that the Town had changed its gender policy for golf tournaments, and the Court finds it likely that members did not understand its significance either.

In sum, despite the policy change, Joyce has pointed to sufficient evidence that she may be subjected to ongoing discrimination to satisfy the four-factor inquiry. See García-Padilla, 490 F.3d at 8.  The remaining issue, then, concerns the scope of appropriate injunctive relief on these facts.

Keeping in mind the First Circuit's directive that permanent injunctive relief must be "narrowly tailored to give only the relief to which plaintiffs are entitled," Brown v. Trs. of Bos. Univ., 891 F.2d 337, 361 (1st Cir. 1989) (citing Califano v. Yamanski, 442 U.S. 682, 702 (1972)), the Court finds that much of the relief Joyce seeks sweeps too broadly or is too vaguely worded to be enforceable.  Requiring defendants to issue a directive that clarifies its policy toward gender-based discrimination at Town-owned golf courses is, however, warranted for the aforementioned reasons.  As a result, the Court will order the defendants to issue a directive, to be provided to all members and posted at Town-owned golf courses and on the courses' website, that there shall be no distinction, restriction or discrimination on the basis of gender at either of the golf courses.

## ORDER

In accordance with the foregoing,

1)    Plaintiff's motion for attorneys' fees (Docket No. 90) is **ALLOWED**, in part, and **DENIED**, in part.  Plaintiff is awarded $87,287 in fees and $4,764 in costs.

2)    Plaintiff's motion for injunctive relief (Docket No. 91) is **ALLOWED**, in part, and **DENIED**, in part. Defendants are ordered to issue a directive, to be provided to all members and posted at Town-owned golf courses and on the courses' website, that there shall be no distinction, restriction or discrimination on the basis of gender at either of the golf courses.

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated February 12, 2014